IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIPULKUMAR RASIKBHAI PATEL (A 220 235 346); SUNITABEN VIPULKUMAR PATEL (A 220 235 347); and AAROHI VIPULKUMAR PATEL (A 220 235 348) | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 25 C 11018 |
| v. | ) ) | Judge Robert W. Gettleman |
| KRISTI NOEM, Secretary, Department of Homeland Security; PAMELA BONDI, United States Attorney General; KIKA SCOTT, Director, U.S. Citizenship and Immigration Services; LAURA ZUCHOWSKI, Director, USCIS Vermont Service Center; and LOREN K. MILLER, Director, USCIS Nebraska Service Center, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINON AND ORDER**

Plaintiffs Vipulkumar Patel, Sunitaben Patel[1], and Aarohi Patel bring a petition for a writ

of mandamus, declaratory judgment under the Administrative Procedure Act ("APA"), 5 U.S.C.

§551 et seq., against defendants the Department of Homeland Security, United States Citizenship

and Immigration Service ("USCIS"), and two USCIS state service centers. Plaintiffs seek to

compel defendants to act on their petitions for U nonimmigrant status and applications for work

authorization (Form I-765) filed by plaintiffs with USCIS on or about May 13, 2024.

Defendants move to dismiss the complaint under Fed R. Civ. P. 12(b)(1) and (6). (Doc. 7). For

the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

---

[1] The caption lists her name as "Sunitaben" while the text of the complaint refers to here as "Sonalben." The court will refer to her using the name in the caption.

1

**BACKGROUND**

Under the Victims of Trafficking and Violence Protection Act of 2000, codified at 8 U.S.C. § 1101(a)(15)(U) ("Crime Victims Act"), immigrants who are victims of serious crimes and who assist law enforcement may apply for and receive "U" nonimmigrant visas.  The U-visa provides legal status to petitioners and qualifying family members to apply for work authorization and remain in the United States.  After possessing U status for three years, such nonimmigrants may apply for lawful permanent resident status.

The U-visa system has a crucial limitation: the total number of aliens who may be issued U-1 nonimmigrant visas or granted U-1 nonimmigrant status may not exceed 10,000 in any fiscal year.  8 U.S.C. § 1184(p)(2).  Once the fiscal year limit of 10,000 U-1 visas is met, USCIS may not grant any further U-1 petitions until new visas become available in the following year.  Each year since 2010, the number of petitioners has exceeded the annual 10,000 visa limit.  USCIS places the excess eligible petitioners on a waiting list and grants them deferred action.  8 C.F.R. 214.14(d)(2).  In addition, USCIS may grant employment authorization to U-1 petitioners on the waiting list and their qualifying family members.

In 2021, USCIS announced an additional policy for U-visa applicants.[2]  The new policy mandates that USCIS will conduct an initial review of Form I-918, the application form for a U-visa, to determine if the petition is bona fide.[3]  If USCIS determines that the petition is indeed bona fide, then it will decide whether to issue a "Bona Fide Determination" ("BFD").  At the

---

[2] "USCIS Issues Policy Providing Further Protections for Victims of Crime," (June 4, 2021), available at https://www.uscis.gov/archive/uscis-issues-policy-providing-further-protections-for-victims-of-crime

[3] In addition to examining whether a petitioner properly filed Form I-918, USCIS examines whether "(1) "[t]he principal petitioner properly filed a personal statement from the petitioner describing the facts of the victimization;" and (2) "[t]he result of the principal petitioner's biometrics has been received."

same time as deciding whether to issue a BFD, USCIS will decide whether to grant deferred

action and employment authorization lasting 4 years to the petitioner.  In addition, USCIS will

decide whether to place such petitioners onto the waiting list for an adjudication of their U-visa

petition.  If, at the first step, USCIS determines that the petition is not bona fide, then the petition

is shunted onto another track, where USCIS determines if the petition is eligible for waiting list

placement.  If the petition is not eligible for waiting list placement, then it is denied entirely.  If

the petition is eligible for waiting list placement—a determination that requires five constituent

actions or determinations—then the applicant will receive deferred action and employment

authorization and be placed onto the waiting list for an adjudication of their U-visa petition.  This

2021 policy is reflected in Volume 3, Part C, Chapters 4-6 of the USCIS policy manual.  A

flowchart of this process is reproduced below.  USCIS Policy Manual, Appendix: Bona Fide

Determination Process Flowchart [3 USCIS-PM C.5, Appendices Tab].



**Appendix: Bona Fide Determination Process Flowchart**

Form I-918 filed by principal petitioner living in the United States is received by USCIS.

3

Vipulkumar Patel is a native and citizen of India, as are his wife, Sunitaben, and daughter, Arohi. They reside in Chicago, Illinois. At the time of the filing of the complaint, plaintiffs had resided in the United States for about four and a half years. In 2023, Vipulkumar was the victim of a crime in Chicago, Illinois that qualified him for a U-1 nonimmigrant visa. Krunal subsequently applied for U nonimmigrant status on or about August 25, 2023. Sunitaben and Arohi and are included as derivatives on Vipulkumar's U-visa application.

As of the filing date of the motion to dismiss, approximately 20 months after plaintiffs filed their petition, USCIS had not made any decision—meaning any of the determinations described above—on plaintiffs' petitions for U nonimmigrant status or the applications for work authorization.[4] That is, in addition to having not completed the final adjudication of plaintiffs' U-visa application, USCIS has not made a determination or taken action regarding: (1) whether the U nonimmigrant status petition is bona fide; (2) whether USCIS may issue a BFD; (3) whether USCIS may grant deferred action; (4) whether the petition is eligible for waiting list placement; and (5) actual placement on the waiting list.

## **DISCUSSION**

Defendants move to dismiss the complaint under Fed. R Civ. P 12(b)(1) and 12(b)(6). Because the Rule 12(b)(1) challenge is jurisdictional in nature, the court addresses it at the outset and then moves to the Rule 12(b)(6) argument. See Miller v. Southwest Airlines Co., 926 F.3d 898, 902 (7th Cir. 2019) (explaining that "[s]ubject-matter jurisdiction is the first issue in any case").

---

[4] As of the issuing date of this opinion, approximately 26 months after plaintiffs filed their petition USCIS has not made any decision on the petitions for U nonimmigrant status or the applications for work authorization.

**A. Rule 12(b)(1) and 8 U.S.C. §1252(a)(2)(B)(ii) jurisdictional bar**

Under Rule 12(b)(1), defendants seek to dismiss the complaint on the basis of 8 U.S.C. §1252(a)(2)(B)(ii), a jurisdiction-stripping provision of the Immigration and Nationality Act ("INA"). Defendants raise a facial challenge to jurisdiction. That is, defendants contend that even if the allegations in plaintiffs' complaint are true, the court lacks jurisdiction to adjudicate them. See Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443-44 (7th Cir. 2009) (explaining the distinction between facial and factual challenges to subject matter jurisdiction). When "evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use Twombly–Iqbal's 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." Silha v. ACT, Inc., 807 F.3d 169, 174 (7th Cir. 2015).

Defendants argue that this court lacks jurisdiction over this case because the jurisdiction-stripping provision of 8 U.S.C. §1252(a)(2)(B)(ii) applies to 8 U.S.C. § 1184(p)(6), the statutory provision that governs USCIS's grant of employment authorization documents ("EADs") to U visa petitioners. The jurisdiction-stripping provision, 8 U.S.C. §1252(a)(2)(B)(ii), reads: "no court shall have jurisdiction to review…any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." According to defendants, § 1184(p)(6) is included in the subchapter and its text vests discretionary authority in the Secretary of Homeland Security. That provision reads: "[t]he Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." Defendants argue that the "may" language in particular sets out the

5

discretionary authority necessary to activate §1252(a)(2)(B)(ii)'s jurisdictional bar.

Plaintiffs argue that this court has subject matter jurisdiction. Specifically, plaintiffs argue that they are not asking the court to compel defendants "to approve a U visa, place them on the waitlist, or issue employment authorization." Instead, plaintiffs characterize the remedy they seek as compelling agency action unlawfully withheld under the APA. Plaintiffs point out that if defendants' jurisdictional argument was correct, the core purpose of the APA would be undermined because USCIS could completely avoid judicial review by declining to act indefinitely.

The court agrees with the government that §1252(a)(2)(B)(ii) precludes this court, or any court, from reviewing the decision to grant work authorization to plaintiffs. The Supreme Court held in Kucana v. Holder, 558 U.S. 233, 247 (2010), that when §1252(a)(2)(B)(ii) is "[r]ead harmoniously" with the preceding provision, §1252(a)(2)(B)(i), the clauses "convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." The language of § 1184(p)(6)— "[t]he Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title"—clearly sets out the Secretary's discretionary authority. While the Kucana Court was focused on the "Attorney General" in §1252(a)(2)(B)(ii), this court has no doubt that the holding extends to the "Secretary of Homeland Security," who is likewise specified in the statute. Plaintiffs' argument that they are not asking the court to compel issuance of EADs is belied by the complaint's prayer for relief, which asks the court to "[d]eclare that [d]efendants have a duty to… issue work authorization." Consequently, this court does not have jurisdiction to review defendants' discretionary authority to grant EADs to plaintiffs.

6

While §1252(a)(2)(B)(ii) bars this court from reviewing the issuance EADs, the court finds that it has jurisdiction over the remainder of plaintiffs' claims. Beyond the issuance of EADs, plaintiffs also ask the court to compel defendants to "make [a] bonafide determination on Mr. Patel and his wife's and daughter's U nonimmigrant status and grant deferred action….[and] place [p]laintiffs on the U Visa waitlist." Putting plaintiffs' prayer for relief in the context of the USCIS policy manual and the CFR, the court understands that there are at least five possible determinations or actions that plaintiffs seek to compel that are not work authorization determinations: (1) whether the U nonimmigrant status petition is bona fide; (2) whether USCIS may issue a BFD; (3) whether USCIS may grant deferred action; (4) whether the petition is eligible for waiting list placement; and (5) actual placement on the waiting list.[5] See USCIS Policy Manual, Appendix: Bona Fide Determination Process Flowchart [3 USCIS-PM C.5, Appendices Tab].

The discretionary authority set out in § 1184(p)(6) does not extend to these determinations or actions. In contrast to the discretion that § 1184(p)(6) affords the Secretary of Homeland Security to grant work authorization, § 1184(p)(4) states that "the Attorney General, as appropriate, shall consider any credible evidence relevant to the petition." In addition, in the absence of an express grant of discretionary authority, the court adheres to a default "principle of statutory construction: the presumption favoring judicial review of administrative action." Kucana, 558 U.S. at 251 (explaining that "[a]ny lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) would be dispelled by [this principle]"). Consequently, the court finds that §1252(a)(2)(B)(ii) does not preclude this court's jurisdiction over plaintiffs' non-EAD

---

[5] A single petition may or may not be subject to all five of these determinations since they are contingent on one another. This is best illustrated by the flowchart reproduced above.

7

related claims.

### B. Rule 12(b)(6) failure to state a claim

1. APA unreasonable delay claim

Defendants seek to dismiss plaintiffs' APA claim because plaintiffs' U-visa applications "have not been pending with USCIS for an unreasonable length of time." In assessing claims of an egregious agency delay under the APA, 5 U.S.C. § 555(b), courts apply the six-factor test first articulated in Telecomm. Research & Action Ctr. v. F.C.C. ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations omitted):

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Defendants, relying on the test from TRAC, argue that each factor favors defendants. Plaintiffs respond, among other things, that TRAC analysis is inherently fact-specific, and that because of this all U-visa delay cases are not interchangeable. Plaintiffs argue that their case is different from the cases cited by defendants because those cases involved shorter delays, single

8

adult plaintiffs, and the absence of specific allegations of hardship. Here, in contrast, plaintiffs contend, there is a family unit with a minor child who has faced a delay of at least 21 months which has harmed their ability to maintain a livelihood.

The court declines to engage in the TRAC analysis on the pleadings. Doing so at this stage in the proceedings would entangle the court in a fact-based inquiry without the benefit of a full record. As this court held in Ruiz v. Wolf, No. 20-cv-4276, 2020 WL 6701100, at *4 (N.D. Ill. Nov. 13, 2020), "at this early stage, the court has insufficient information with which to evaluate these factors." The court also notes that defendants' arguments on the TRAC factors, like their arguments on jurisdiction, fail to distinguish between a final U-visa adjudication and the other determinations that precede a final U-visa determination that are also the subject of this case. Consequently, the court finds that plaintiffs' complaint alleges sufficient facts to state a claim to relief that is plausible on its face. Defendants' motion to dismiss plaintiffs' APA claims is denied.

2. Mandamus relief

A district court may issue a writ of mandamus to compel an officer or agency of the federal government to perform a duty owed to the petitioner. 28 U.S.C. § 1361. Mandamus relief is warranted if the petitioner can demonstrate that the following three conditions are met: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act; and (3) no other adequate remedy is available. Iddir v. I.N.S., 301 F.3d 492, 499 (7th Cir. 2002). Defendants argue plaintiffs' mandamus claim fails because it is impossible for plaintiffs to meet the third element of a mandamus claim—that "no other adequate remedy is available," Iddir, 301 F.3d at 499—while they simultaneously are pursuing a remedy under the APA. The court agrees

9

with defendants. Consequently, the court grants defendants' motion to dismiss the mandamus claim.

## CONCLUSION

For the above reasons, defendants' motion to dismiss [7] is granted in part and denied in part. Defendants' motion to dismiss for lack of jurisdiction is granted in part. All claims relating to defendants' decision to grant work authorization to plaintiffs are dismissed for want of jurisdiction. The court has jurisdiction over plaintiffs' remaining claims. Defendants' motion to dismiss for failure to state a claim is denied. Plaintiffs' mandamus claim is dismissed. Defendants are directed to answer the complaint on or before September 8, 2026. The parties are directed to file a joint status report, using this court's form, no later than September 15, 2026.

ENTER:

Robert W. Gettleman
**United States District Judge**

DATE: July 22, 2026

10